# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DUMITRU VASU, | ) | CASE NO. 5:16-cv-747 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| AMERICAN UNITED LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the parties' cross motions for judgment on the administrative record. Plaintiff Dumitru Vasu ("plaintiff" or "Vasu") asks the Court to overturn the decision of defendant American United Life Insurance Company ("defendant" or "AUL") denying his claim for life insurance benefits. Defendant asks the Court to affirm the decision denying benefits. The cross motions are fully briefed and ripe for decision.[1] For the reasons that follow, defendant's motion for judgment on the administrative record is granted, and plaintiff's motion for judgment on the administrative record is denied.

## I. Background

The background facts of this case are not in dispute. Plaintiff is the son of the late Victor Vasu ("decedent"), and the named beneficiary of his father's life insurance policy. (Doc. No. 11-

---

[1] Defendant's motion (Doc. No. 12 ["D. Mot."]), plaintiff's opposition (Doc. No. 16 ["P. Opp'n"]), and defendant's reply (Doc. No. 18 ["D. Reply"]). Plaintiff's motion (Doc. No. 14 ["P. Mot."]), defendant's opposition (Doc. No. 17 ["D. Opp'n"]), and plaintiff's reply (Doc. No. 19 ["P. Reply"]).

1 (Administrative Record ["AR"]) at 199.[2]) Decedent was an employee of Combi Packaging Systems, LLC ("Combi") in Canton, Ohio.

### A.     The Plan and Life Insurance Benefits

Combi sponsored an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"), which included a basic life benefit ("Basic Life") and a voluntary life benefit ("Voluntary Life") provided through a group policy, Policy # G00607886-0000-000, issued by AUL to Combi ("Plan").[3] AUL is the claim administrator for the Plan with "authority to determine insurability, the effective date of Insurance coverage, the amount of Insurance coverage, to interpret and administer any of the requirements set forth in the group policy, and to amend the policy[,]" and "[b]enefits under the group policy will be paid only if AUL decides in its discretion the applicant is entitled to them[.]" (AR at 433, ¶ 2.)

#### *Basic Life Benefit*

In order to be eligible for Basic Life, an individual must be a full-time employee of Combi, defined as a person capable of performing his regular job duties for at least 30 hours per week. The premiums for Basic Life are paid by Combi. The decedent had a Basic Life death benefit of $25,000.00. Basic Life coverage terminates when the insured no longer meets eligibility requirements, which includes no longer working as a full-time employee.

---

[2] All references to page numbers are to the page identification number generated by the Court's electronic filing system that corresponds to the administrative record page number.

[3] The Plan document consists of the policy, enrollment forms of individuals, the application of Combi for group insurance, and any amendments from time to time. (*See* AR at 121, 183.)

If the insured ceases work as a full-time employee due to sickness or injury, however, Basic Life may be continued for up to 9 months as long as Combi pays the premiums during that time period ("Continuation of Insurance"). (*Id*. at 99.) Basic Life terminates at the end of the 9 month Continuation of Insurance period unless: (1) the insured is eligible for a Life Waiver of Premium for Total Disability ("LWOP")[4]; or (2) the insured converts to an individual policy. (*Id*. at 99, 103.)

If the insured's LWOP request is not approved, the insured "may elect to convert his coverage to an individual policy within 31 days from notice of the non-approval" ("Conversion Privilege"). (*Id*. at 102.) In order to convert his Basic Life to an individual policy, the insured must submit written application and pay the first premium within 31 days after the later of termination of insurance or "conversion notification by the Group Policyholder." (*Id*. at 104.) Combi is the Group Policyholder. (*Id*. at 89.)

### *Voluntary Life Benefit*

To be eligible for Voluntary Life, an individual must also be a full-time employee of Combi. The premiums for Voluntary Life are paid by the insured. The decedent had a Voluntary Life death benefit of $110,000.00. If Voluntary Life coverage ceases due to termination of employment, the insured may continue coverage until 70 years of age so long as the premiums are paid ("Continuation Insurance") if the insured submits a written notice seeking Continuation of Insurance and the required premium to AUL within 31 days of the date of termination of Voluntary Life coverage. (AR at 140.) If Voluntary Life coverage ceases due to disapproval of a LWOP claim, the insured may apply for and receive an individual conversion policy

---

[4] To be eligible for a LWOP, the insured must become totally disabled before the age of 60. (AR at 101.)

("Conversion Privilege"). Like the Conversion Privilege for Basic Life, the insured must submit a written application and the first premium must be paid within 31 days after the later of: (1) termination of insurance; (2) notification from AUL of disapproval of the Waiver of Premium claim; or (3) the conversion notification by the Combi. (*Id.* at 153.)

## B.    Victor Vasu's Disability and Death

Victor Vasu suffered a stroke on July 12, 2013 and was unable to return to work, but was not terminated by Combi because of the hope that he would be able to return to work. (*Id.* at 421.) He applied for a LWOP, but because he was over 60 at the time he was disabled, AUL denied his LWOP claim by letter dated December 24, 2013.[5]  (*Id.* at 74-78.)

After a lengthy explanation of why he was not eligible for LWOP, AUL's letter informed Victor Vasu that:

> You may be eligible to exercise your Conversion, Portability or Continuation of Coverage privilege to maintain life insurance by paying premiums directly to AUL. These provisions are outlined in the group policy. Based on the terms stated in the group policy, if you are interested in pursuing these opportunities, you must return the enclosed Application to Continue/Port or Convert Group Insurance within 31 days of the date of this letter. If you have any questions regarding the Application to Continue/Port or Convert Group Insurance, please call 1-800-553-5318 and choose the Request for Quote for Continuing Insurance Option.

(*Id.* at 77.)

AUL's letter further advised Victor Vasu of his right to appeal the denial of LWOP coverage, and again provides contact information for further assistance. AUL also notified Combi that Victor Vasu's LWOP claim was denied, and that he had been advised of

---

[5] The denial of the LWOP claim is not at issue in this case. (P. Mot. at 556.)

"appeal and conversion procedures." (*Id.* at 271.) Combi contacted AUL on January 3, 2014 about the denial of Victor Vasu's LWOP claim. (*Id.* at 421.) AUL's notes from that phone call state that "Life coverage" can continue for 9 months as long as premiums are paid, but if Victor Vasu did not return to work, "[Combi] will need to offer him conversion forms."[6] With respect to Voluntary Life coverage, the telephone notes state that coverage could continue to 70 years of age as long as premiums were paid by the insured. (*Id.*) There is no evidence in the administrative record that the decedent applied for continuation or conversion coverage of his life insurance policies after receiving AUL's letter of December 24, 2013, or at any time. Victor Vasu passed away on June 7, 2014. (*Id.* at 197.)

### C.    Plaintiff's Claim for Death Benefits and Complaint

Combi completed a proof of death claim form for insurance benefits of $25,000.00 for Basic Life, and $110,000.00 for Voluntary Life, coverage. (*Id.* at 191-92.) AUL declined to pay the life insurance benefits because the decedent's benefits had terminated when his LWOP benefits were denied on December 24, 2013, and he did not continue or convert his insurance coverage. Thus, no insurance coverage was in place on June 7, 2014.

Following defendant's denial of life insurance benefits, plaintiff file a complaint in the Stark County Court of Common Pleas against AUL, claiming that the AUL was contractually required by the policies to pay death benefits to the plaintiff, that AUL breached the contract by refusing to pay the benefits, and that plaintiff is entitled to payment in the total amount of $135,000.00. (Doc. No. 1-1 ["Compl."] ¶¶ 7-9.) Defendant removed the case based on the Court's

---

[6] It is unknown whether Combi provided Victor Vasu with the "forms," but AUL's letter notifying him of his conversion options states that the application was enclosed with the letter.

5

federal question jurisdiction under pursuant to 28 U.S.C. § 1331 because the Plan is governed by ERISA, diversity jurisdiction pursuant to 28 U.S.C. § 1332, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to the extent that the Court determines that plaintiff's state law claims are not preempted by ERISA. (Doc. No. 1 ["Notice of Removal"] at 3.)

## II.  Discussion

### A.    Standard of Review

The decision of an ERISA plan administrator to deny benefits is reviewed *de novo,* unless the benefit plan grants the administrator discretionary authority to determine eligibility for benefits or construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). Where there is a clear grant of discretionary authority to the administrator under the terms of the Plan, the Court applies an arbitrary and capricious standard of review to the administrator's decision to deny benefits. *Wulf v. Quantum Chem. Corp.,* 26 F.3d 1368, 1373 (6th Cir. 1994). In this case, there is no dispute between the parties that the Plan grants discretionary authority to AUL as the administrator. Accordingly, the Court reviews AUL's decision denying benefits under the arbitrary and capricious standard.

Under this standard, the Court must affirm the decision of the administrator if the record evidence establishes a reasonable basis for the decision. *Davis v. Ky. Fin. Cos. Ret. Plan,* 887 F.2d 689, 693-94 (6th Cir. 1989). The Court must determine whether the administrator's decision was "the result of a deliberate, principled reasoning process and . . . supported by substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds,* 929 F.2d 1140, 1144 (6th Cir. 1991). An administrator has not acted arbitrarily and capriciously if it is "possible to offer a reasoned explanation, based on the evidence" for its decision to deny benefits. *Perry v. United*

*Food & Commercial Workers Dist. Unions,* 64 F.3d 238, 242 (6th Cir. 1995).

An administrator's rational interpretation of a plan must be accepted, "even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.,* 385 F.3d 989, 992 (6th Cir. 2004). This deference extends to the administrator's interpretation of "ambiguous and general terms" of a plan. *Jones v. Metro. Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004).

Although the Court must take into account any conflict of interest on behalf of the plan administrator in reviewing a denial of benefits, a conflict of interest does not alter the standard of review. *McCartha v. Nat'l City Corp.,* 419 F.3d 437, 442–43 (6th Cir. 2005) (citing *Peruzzi v. Summa Med. Plan,* 137 F.3d 431, 433 (6th Cir. 1998)). The Sixth Circuit has cautioned, however, that "[c]ourts should be particularly vigilant in situations where . . . the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims." *Univ. Hosps. of Cleveland v. Emerson Elec. Co.,* 202 F.3d 839, 847 n. 4 (6th Cir. 2000). That said, "there must be some evidence that the alleged conflict of interest actually affected the plan administrator's decision to deny benefits." *Lanier v. Metro. Life Ins. Co.,* 692 F. Supp. 2d 775, 786 (E.D. Mich. 2010) (citing *Peruzzi,* 137 F.3d at 433). When a claimant "offers more than conclusory allegations of bias[,]" the conflict-of-interest factor is more significant. *Judge v. Metro. Life Ins. Co.,* 710 F.3d 651, 664 (6th Cir. 2013) (quoting *DeLisle v. Sun Life Assurance Co. of Canada,* 558 F.3d 440, 445 (6th Cir. 2009)).

The arbitrary and capricious standard of review is not a mere "rubber stamp" of the plan administrator's decision. *Jones,* 385 F.3d at 661. "Deferential review is not no review, and deference need not be abject." *McDonald v. W.S. Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003) (internal quotation omitted). Indications of arbitrary and capricious decisions include a lack of substantial evidence, a mistake of law, bad faith, and a conflict of interest by the decision maker. *Toohig v. Nat'l City Corp. Amended and Restated Mgmt. Severance Plan,* No. 1:10 CV 657, 2011 WL 2456711, at *3 (N.D. Ohio June 16, 2011) (citing *Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1282 (10th Cir. 2002)). Similarly, a decision based upon a selective review of the record or an incomplete record is arbitrary and capricious. *Moon v. Unum Provident Corp.,* 405 F.3d 373, 381 (6th Cir. 2005).

### B.    Analysis

Plaintiff argues that it was not rational for defendant to deny benefits on the decedent's life insurance policies because defendant did not notify Victor Vasu or Combi that decedent's life insurance policies terminated on December 24, 2013. Plaintiff reasons that even though AUL's letter notified Victor Vasu of his conversion options to maintain his life insurance benefits, the decedent could not be expected to take the steps necessary to continue or convert his insurance coverage because the letter did not expressly notify him that his benefits were terminated. Moreover, plaintiff argues, AUL's denial of benefits is not rational because its own records are inconsistent regarding the dates through which Victor Vasu's policy premiums were paid.

### Notice requirements

In support of his failure to notify of termination argument, plaintiff points to *Stafford v. First Tenn. Nat'l. Bank*, 230 F.3d 1360 (Table), 2000 WL 1359631 (6th Cir. 2000). Beyond citation to this single case, plaintiff simply asserts that "the most basic duty of any administrator is to provide notice, and the concept of notice is so fundamental to our jurisprudence as to require no citation to authority." (P. Mot at 557.) *Stafford*, however, does not address the issue of notice of termination of insurance, but notice of continuation/conversion of insurance coverage. In *Stafford*, the administrator denied life insurance benefits on the basis that the insured did not convert to an individual policy and therefore was not insured at the time of his death. The plan required that the administrator give the insured timely notice of his right to *convert*, but the administrator did not do so. *Stafford*, 2000 WL 1359631, at *6-8. When notice was finally given and conversion was attempted, the administrator refused to permit the conversion. The Sixth Circuit affirmed the district court's finding that the denial of benefits was not rational or reasonable because, among other reasons, the administrator did not comply with the requirements of the plan. *Id.* at * 9.

It is undisputed that Victor Vasu received timely notice from AUL of his right to convert/continue his insurance policies as required by the Plan, even though the obligation to give notice was Combi's. Plaintiff does not point the Court to any provision of the Plan that AUL violated by the notice given to Victor Vasu in its letter of December 24, 2013.

### Premium payments

Plaintiff also argues that AUL's denial of benefits was not rational because AUL's records are inconsistent with respect to the dates through which the decedent's premiums were

paid. Combi's claim form states that premiums were paid through June 30, 2014. (AR at 191.) One AUL document indicates that premiums were paid through July 31, 2014. (*Id.* at 415.) Plaintiff also points to two internal documents showing that the decedent was covered by the policies for one month after December 24, 2013—the date AUL determined that coverage ceased pursuant to the terms of the insurance policies. Plaintiff contends that these internal documents are not consistent with the policy language upon which AUL based its denial of benefits, and constitutes "unique and compelling circumstances" supporting a conclusion that AUL's denial of benefits was not rational. (P. Mot. at 558.)

Plaintiff's argument is unavailing. The arbitrary and capricious standard of review is whether the administrator's *decision* was rational under terms of the policy, not whether some of AUL's internal records were inconsistent with the policy language utilized by AUL in its determination to deny benefits. An administrator's rational interpretation of a plan must be accepted even if, arguably, an equally rational interpretation is offered by the participants. *See Morgan,* 385 F.3d at 992. Moreover, payment of premiums and confusion over benefits is not dispositive of the determination of whether the AUL's determination of eligibility for benefits under the terms of the Plan is arbitrary and capricious. *Fendler v. CNA Grp. Life Assur. Co.*, No. 5:03 CV 2108, 2005 WL 3307314, at *4 (N.D. Ohio Dec. 6, 2005) ("While there appears to have been some confusion regarding Mrs. Fendler's benefits, the only issue before the Court is whether Defendant's denial of the claims was arbitrary and capricious[.]"), *aff'd Fendler v. CNA Grp. Life Assur. Co*, 247 F. App'x 754 (6th Cir. 2007).

### *AUL's denial of benefits was not arbitrary and capricious*

AUL argues that this case is like *Fendler*, where the defendant administrator denied a claim for life insurance benefits and was granted judgment on the pleadings by the district court on very similar facts.[7] In *Fendler*, Eleanor Fendler became disabled after the age of 60 and was denied LWOP coverage. She was notified that she had the option to convert her group coverage to individual coverage within a certain period of time, but she did not do so. When she died, the claim for death benefits was denied because the administrator determined she had not converted her coverage and was not otherwise eligible for life insurance coverage under the plan (notwithstanding the payment of premiums by her employer until the date of her death, and her employer's contention that she remained an active employee beyond the date determined by the claim administrator). *See Fendler*, 247 F. App'x at 756-57.

In this case, in order to be eligible for insurance under the Plan, an individual must be a full-time employee as defined by the Plan. There is no dispute that, under the terms of the Plan, Victor Vasu ceased active employment on July 11, 2013, due to a disability. Because of his disability, AUL considered whether he was eligible under the Plan for LWOP. On December 24, 2013, AUL notified the decedent that he was not eligible, which the parties do not dispute.

Because he was not eligible for LWOP, if the decedent desired to continue his Basic Life and Voluntary Life under the Plan, he was required to convert those policies. AUL notified Victor Vasu on December 24, 2013, that he could apply to convert those policies in order to

---

[7] Plaintiff contends that *Fendler* is not instructive because it does not address the issue of notice of termination. The Court has already determined, however, that the issue of notice does not provide a basis in this case for finding that the administrator acted arbitrarily and capriciously.

11

maintain his life insurance coverage, and must do so in 31 days.[8] There is no dispute that Victor Vasu did not convert the policies. Under the terms of the Plan, Victor Vasu was not insured, or eligible for insurance, on the date of his death. Accordingly, the Court concludes that AUL's denial of benefits was not arbitrary and capricious because its determination was consistent with the provisions of the Plan. *Univ. Hosps. of Cleveland,* 202 F.3d at 846 ("Under this deferential 'arbitrary and capricious' standard, we will uphold a benefit determination if it is 'rational in light of the plan's provisions.'").

### *Conflict of interest does not render AUL's decision arbitrary and capricious*

Plaintiff argues that AUL had a conflict of interest in making its determination to deny benefits because the administrator determining eligibility for benefits is also the insurance carrier responsible for paying benefits. Plaintiff reasserts his notice argument as a basis for raising suspicion regarding the impartiality of the defendant in denying coverage. (P. Opp'n at 569-70.) For the reasons discussed above, however, this argument fails to establish that "the alleged conflict of interest actually affected the plan administrator's decision to deny benefits." *Lanier,* 692 F. Supp. 2d at 786. Accordingly, the alleged conflict does not alter the Court's conclusion that AUL's denial of benefits was not arbitrary and capricious under the provisions of the Plan.

---

[8] Because decedent ceased active employment due to a disability, Basic Life coverage could be continued under the Plan for 9 months after his disability if Combi continued to pay premiums. But even if premiums were paid by Combi until April 11, 2014, in order to continue Basic Life coverage, the Plan required decedent to convert his Basic Life from a group policy to an individual policy. There is no dispute that, regardless of whether Combi paid the premiums during the 9-month period, the Basic Life policy was not converted at any time.

### III.  Conclusion

For all of the foregoing reasons, defendant's motion for judgment on the administrative record (Doc. No. 12) is granted, and plaintiff's motion for judgment on the administrative record (Doc. No. 14) is denied.

The parties' briefs for judgment on the administrative record do not address the issue of whether plaintiff's state law claims are entirely preempted by ERISA. This issue was not raised by counsel for either side at the case management conference and the parties' report of planning describes this case as an ERISA case. (Doc. No. 9 at 56.) ERISA preempts state law and state law claims that "relate to" any employee benefit plan as that term is defined therein. 29 U.S.C. § 1144(a). *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987).

There is no dispute that the Plan is an ERISA employee benefit plan. Plaintiff's state law claims arise out of the failure of defendant to pay benefits under the decedent's insurance policies and, therefore, "relate to" the Plan. It appears to the Court that plaintiff's state law claims are preempted by ERISA. *See Kmatz v. Metro. Life Ins. Co.*, 458 F. Supp. 2d 553, 557 (S.D. Ohio 2005) (citing *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir. 1991)).

13

If plaintiff believes that some aspect of his state law claims are not preempted by ERISA, then plaintiff shall file a brief in support of that argument on or before April 3, 2017. Defendant's response shall be filed on or before April 10, 2017. No reply will be permitted, unless ordered by the Court.

**IT IS SO ORDERED**.

Dated: March 27, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

14